(26 Misc. Rep. 287.)

### GUSHEE v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. February, 1899.)

1. MUNICIPAL CORPORATIONS—POWERS—PARKS—LEASES.
    The department of public parks may lease a building on park premises for a period of years, to be used as an hotel and restaurant for the accommodation of visitors at the park.

2. SAME—INJUNCTION.
    The city will be restrained from ejecting the tenant, where the lease has been partly performed, and the tenant has expended large sums in reliance on it.

Action by Ralph A. Gushee against the city of New York for an injunction. Judgment for plaintiff.

Turner, McClure & Rolston, for plaintiff.
John Whalen, Corp. Counsel, for defendant.

STOVER, J. Plaintiff originally leased from the city the building called the "Claremont," located in Riverside Park, for one year from April 1, 1896; and under a resolution of the department of public parks, adopted about March 15, 1897, the plaintiff continued in possession, a formal lease for five years from April 1, 1897, being executed in November, 1897. Plaintiff has performed all the conditions of the agreement on his part, and has paid or tendered the rent as it became due. The principal, if not the only, question raised is as to the power of the department of public parks to make a lease for a term of years, or such an agreement as the one in question. The park premises upon which the hotel is located are held and used by the city, under the direction and control of the park department, for such public uses as parks are usually devoted to. The hotel has been leased from time to time, by the authorities in control of the park; and, at the time the plaintiff's latter lease was executed, he had expended a large amount of money in the improvement and alteration of the premises, relying upon the agreement which had been made with the park commissioners. The authorities having threatened to eject the plaintiff from the premises, this action is brought to restrain such action.

It is conceded by both plaintiff and defendant that there is a distinction between property held by a municipality in its governmental capacity and that owned by it in its private capacity; the word "private" being used in this instance, perhaps, to designate functions not necessarily connected with governmental powers, but yet incident to the control and management of property owned and held

by the city. But I do not think it is necessary to make this distinction in order to find warrant for the city's management of its property. The general power of the city to hold real estate necessarily implies the power to manage, to control, and to do any act necessary or proper within the legitimate sphere of such management; and the question ordinarily presented, and the one which is presented in this case, is whether the act under consideration is a reasonable and fair exercise of that power. This property, as leased, is not used by the general public, and in fact is not in condition to be used, except as it may be utilized as an hotel and restaurant for the convenience of the visitors to the park; and no argument would be necessary to show that the lease of such building could be more advantageously made for a reasonable term than from year to year, and with no guaranty that the occupant should not be interfered with, and lose the fruits of the management of the hotel. It is quite true that any one taking leases of such property must always take it subject to the right of the municipality at any time to devote it to the public use; but it seems to me that a court of equity ought not to permit the city to obtain the benefit of the establishment of an hotel, and, simply upon the caprice of an official, with no resulting good to the public, take the property and destroy the business of the lessee. No extended argument is necessary to show the advantage that might result from a lease of this character, and no pretense is made, and no proof offered, of any illegal or improper method or object in the lease of the property, but, for all that appears from the evidence in this case, it was a lease advantageous to the city, as it resulted in the establishment of an hotel which contributed to the comfort and convenience of the public using the park. I do not wish to be understood, by this line of reasoning, as saying that in every case the court should uphold a lease for a term of years; but, rather, the question to be determined is one as to the reasonableness and fairness of the act or contract, after it is once determined that it is within the apparent authority of the officials making it. And, as intimated above, the right to control and manage this real estate carries with it the power to make such contracts as may accomplish that purpose. And in this particular case it seems to me that the equities in favor of the plaintiff appeal strongly to the court. The contract has been entered into by the plaintiff, and observed by him, in good faith; and to now permit the city to repudiate its lease, without any corresponding benefit to the public, would seem to me to be contrary to equitable rules. An individual entering into such a contract would, under the circumstances shown here, be estopped by his own act from questioning the validity of the lease; and if the city, through its officials, enters into such contracts, I can see no reasonable ground why equitable rules should not be applied in the consideration of such contracts, as well as in the case of an individual.

There is no reason, therefore, either legal or equitable, why this lease should not be upheld. Plaintiff is entitled to the relief demanded.