GUSHEE v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   June 16, 1899.)

1. INJUNCTION—ADEQUATE REMEDY AT LAW—WAIVER.
    Whether plaintiff had an adequate remedy at law, in a suit in equity to
    restrain defendant from ending an agreement between him and plaintiff, is
    waived, where defendant fails to raise the question in the trial court.
2. MUNICIPAL CORPORATIONS—PARKS—LEASES—ULTRA VIRES.
    The department of public parks may lease a building on park premises
    for a period of years for restaurant purposes, and it cannot be held, as a
    matter of law, that any particular period for which the lease was granted
    is unreasonable or ultra vires, unless it interferes with some other positive
    duty of such department.

**3. SAME—VALIDITY OF ·LEASE.**

　　A lease by the department of public parks of a building on park premises is not void because it will deprive the department of the power to exercise its duty in making such regulations as may be necessary for the government of the park, where the lease is subject to such regulations as are or may be afterwards prescribed. '

**4. SAME—RIGHTS OF LESSEE.**

　　Where the department of public parks leases a building on park premises subject to such regulations as are or may be prescribed as to the government of parks, a lessee acquires such right as entitles him to the court's protection to prevent any capricious or unnecessary interference therewith, until a regulation is in good faith adopted taking away the privileges granted by the contract. ·

　　Barrett, J., dissenting.

　　Appeal from special term, New York county.

　　Action by Ralph A. Gushee against the city of New York for an injunction restraining the department of parks from interfering with him in the conduct of a hotel in Riverside Park. From a judgment of special term granting the relief demanded (56 N. Y. Supp. 1002), defendant appeals. Affirmed.

　　Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

　　Theodore Connoly, for appellant.
　　David McClure, for respondent.

　　RUMSEY, J. On the bank of the Hudson river, on the west side of the city of New York, is situated Riverside Park, and upon an eminence at the upper end of that park stands a building, with stables and other outbuildings, which has been fitted up for a place of rest and refreshment for persons who have occasion to use the park. For some years, and certainly as far back as 1892, the department of parks had granted the right to keep a restaurant in the park either for a rental paid monthly or for a certain proportion of the receipts. In the month of March, 1896, the person who had been in possession of the restaurant left it for some reason, and an agreement was made between the authorities of the city, by the department of parks on the one hand, and the plaintiff here on the other, by which there was granted to the plaintiff the right to keep this restaurant. That grant or license would, by its terms, expire on the 1st of April, 1897. On the 24th of February, 1897, the plaintiff applied for a renewal, and negotiations to that end were completed between the department of parks and the plaintiff in the month of November, 1897, at which time the department of parks, claiming to act for the city, granted to the plaintiff the privilege of selling refreshments in the building in the park which was known as "Claremont," for the term of five years from the 1st day of April, 1897, unless the agreement be sooner revoked or canceled or annulled as therein provided. The plaintiff, on his part, agreed to enter upon the exercise of the privilege thereby granted, and to conduct the restaurant in a style and manner satisfactory to the department of parks, and under such restrictions, rules, and regulations as might be prescribed by them. He made further agreements as to the rates of charges and repairs and other matters, which need not be con-

sidered here, and agreed to pay to the department, for the privilege, the sum of $525 a month. It was further agreed that the agreement and privilege thereby granted were personal, and that the plaintiff would not assign the same, or any part thereof, without the written consent of the department. The plaintiff made a further stipulation that he would conform, and require all persons in his employ to conform, to all rules, regulations, requirements, and ordinances then prescribed, or which thereafter might be prescribed, by the department in relation to the conduct of the privileges thereby granted, and the general character of the furniture, fixtures, equipment, employés, and all things pertaining thereto, or to the general management or government of said park. It was further agreed that, if he should omit to keep any of the covenants, the agreement might, at the option of the department, be revoked, and should thereupon become null and void, and he should remove from the building and premises, and cease to exercise the privileges granted to him. The plaintiff alleges in his complaint that the department of parks threatens to eject and remove him from the possession of the building, and will do so, unless it is restrained, and he brings this action to procure an injunction restraining the department from interfering with him in the conduct of his hotel, or from preventing him from enjoying the privileges granted by his agreement.

Upon the trial the foregoing facts were established, and it was made to appear that on the 29th of April, 1898, the park commissioner of the boroughs of Manhattan and Richmond notified the plaintiff that he had that day revoked, canceled, and annulled the license agreement under which he was conducting the hotel or restaurant in Riverside Park known as "Claremont," and ordered the plaintiff to vacate the premises on or about the 15th of May, 1898. At the conclusion of the plaintiff's case, no testimony having been offered on the part of the defendant, the court directed judgment to be entered restraining the commissioner of parks from interfering with the plaintiff in the conduct of said hotel, and from in any way preventing the said plaintiff from enjoying the privileges granted to him by the agreement of November 8, 1897. From that judgment this appeal is taken.

The defendant insists that as this action is in equity, to restrain the defendant from putting an end to the agreement between it and the plaintiff, it must be based upon the theory that he has no legal right, as against the defendant, to the possession of this restaurant. This contention is not well founded. In view of the way in which the questions here are presented, it is not necessary to consider whether the plaintiff has a remedy at law for the grievance of which he complains. No such question was raised at the trial by motion, nor is there any allegation in the answer that the plaintiff has an adequate remedy at law. If the defendant proposed to rely upon that point, it should have raised the question in its pleading (Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541), or, at least, should have taken the point upon the trial of the action. As it has not done so, it must be deemed to have waived that point.

The question is then presented whether the plaintiff, by this agree-

ment, acquired any right which the courts would protect, either at law or in equity. By the terms of the agreement, the plaintiff was bound to keep, maintain, and conduct the restaurant in a manner prescribed therein. He was to keep the building in repair, and to maintain it in good and proper condition. This duty necessarily required him to take and keep possession of the buildings while the agreement was in force. He bound himself during that same time to pay, for the rights he acquired, the sum of $525 a month. This agreement, involving, as it did, the possession of real estate and the payment of a monthly rent for it, was practically a lease. 4 Kent, Comm. 96, 97; Tayl. Landl. & Ten. (8th Ed.) § 26. At the time the agreement was made, the charter of the Greater city had not taken effect, and the department of parks of the then city of New York was exercising the powers given to it by the consolidation act. By section 668 of that act, that department was required and empowered to control and manage all public parks. There is a well-recognized distinction between the duties imposed by the legislature upon a municipal corporation for the public benefit and those acts which it does in what may be called its private character, in the management of property voluntarily held by it for its own use and advantage, although such use may ultimately inure to the benefit of the public. Bailey v. Mayor, etc., 3 Hill, 531. The boundary between these two kinds of powers is shadowy and difficult of demarcation. Whether a city, in the control of property which it has taken for a park, acts in the one capacity or the other, it is difficult to say. It has been held by a court of high reputation that, in the opening and control of public parks, a city acts in its private capacity, as the owner of land, precisely as it does in the making of waterworks or the furnishing of gas. People v. Common Council of Detroit, 28 Mich. 227; Dill. Mun. Corp. (4th Ed.) §§ 72, 73.

The department of parks acted, in making this agreement, in the exercise of the power given to it by the legislature to control and manage the parks. The building in question was the private property of the city. It was proper that it should be utilized for the purpose for which it was used, if, indeed, it were not actually erected for that purpose by the city authorities. That, in the control and management of the public parks of a great city, it is perfectly proper to furnish not only such innocent amusements as may enhance the pleasure of those who resort to the parks, but such opportunities for rest and refreshment for themselves and their animals as may be required, will not be disputed. The doing of these things is no part of the public duty imposed upon municipal corporations as the agent of the state in the performance of its governmental functions, but rather a part of the business of the city, which it may or may not undertake in its private capacity, as the owner of the lands which have been set apart for park purposes. Whether these things shall be done at all, and, if so, to what extent, is a matter with which the state, as such, has no concern whatever, and in no way affects the public duties of the city, and has no connection with any function of government, strictly so called. The legislature has imposed upon the city cer-

tain duties in respect of the maintenance of order and the punishment of crime. These duties are public and governmental in their nature, and in the performance of them the city acts as the agent of the state. But such duties, whether imposed upon the city or upon the department of parks, are of an entirely different character from those which are imposed upon that department by the power which is given to it to make the parks useful and convenient for the pleasure and comfort of the citizens. Whether, in doing those things, the authorities shall act themselves, or whether they shall be performed by private persons under an agreement with the park authorities, must be left very largely to the discretion of those who have control of the parks. If, in their judgment, it shall seem better that the furnishing of refreshment shall be farmed out to some person for a consideration, subject to the regulation and control of the authorities, it cannot be said, as a matter of law, that such discretion is beyond their power. If, in the exercise of that discretion, it should be more advantageous to grant such a privilege for a fixed period, it certainly would not be beyond the power of the department, unless it interfered with some other power, or prevented the discharge of some other duty, which the legislature imposed upon them, and with the exercise of which such an agreement was inconsistent. There is nothing in an agreement to permit these things to be done for a fixed period of time which, of itself, is outside of the power of the department of parks to control and manage the parks, and it cannot be said, as a matter of law, that any particular period for which such a license should be granted or agreement made would be unreasonable or ultra vires, unless it interfered with some other and positive duty.

But it is said by the defendant that the making of this agreement, by which the possession of this house was given to the plaintiff for a term of five years, put it out of the power of the department of parks to exercise the duty imposed upon it of making rules and regulations and enacting such ordinances as might be necessary for the government and protection of parks. The argument is that, if it should happen that the commissioners of parks concluded that it was not best to conduct a restaurant at Claremont, they were precluded by the agreement with the plaintiff from closing the restaurant during the term of five years, and this is the reason why it is said that the agreement was beyond the power of the department of parks, and therefore is void. In considering this point, it must be remembered that it is not claimed on the part of the defendant that the department of parks has determined that no restaurant should be kept at this place and in this building, nor is there any evidence or suggestion that the plaintiff is not a perfectly proper person to keep it, or that he, or any of his employés, have failed to observe all the rules and regulations that have been made for the government of the park. It does not appear that any regulation or ordinance has been made, or is intended to be made, by the commissioners of parks, or by the commissioner in charge of this park, which would in the slightest degree be affected by the plaintiff's continuing in this business at

this place, or that the operation of this restaurant by him would be inconsistent with any regulation or ordinance which is intended to be made. Nothing of the sort has been proven, nothing of the sort is found by the court, and we would not be at liberty to infer that anything of the kind existed, for the purpose of reversing this judgment. Foundry Co. v. Hersee, 103 N. Y. 25, 9 N. E. 487. If anything of the kind did exist, it would present an entirely differ-ent question from that which confronts us here. The question, as presented, is simply whether this agreement by which the plaintiff is authorized, for a fixed period, to operate this restaurant, is so utterly void that he will not be protected in the exercise of his rights, but is liable to be removed at the mere caprice of the commissioners of parks, without any suggestion that his presence, or the continuance of his agreement, interferes in the slightest degree with the performance of their duties. A decision in favor of the defendant involves the proposition that, without any reason, it may remove this man at its will from this restaurant, and put in some one else to keep it, in the same circumstances and at the same rent. If that be the rule, it would prevent the granting of such a license for any period, however short. It cannot be said, as a matter of law, that the granting of a license for five years is unreasonable, and we cannot make any such presumption for the purpose of reversing this judgment. The department of parks is one body, with a continuous existence, although its membership may vary from time to time. Its duty to exercise its discretion must continue unimpaired at all times, and it has no power to deprive itself of that discretion for a week, any more than it has for five years; so that it necessarily follows that, if this contract cannot be made, no other contract can be made which would entitle anybody to conduct this restaurant for any specified time, however short. It is apparent that, if that be true, the department of parks could never make any contract by which any person would undertake the conduct of this restaurant; for no intelligent person would incur the expense necessary for this undertaking, if he were liable, at the mere caprice of the department, to have his contract determined, and to be removed immediately after he had made it. In our judgment, no such absurd conclusion is required. The power to control and manage the parks necessarily involves the right to cause this restaurant to be conducted by some person with whom a contract shall be made for that purpose. Whatever contract is necessary for that purpose is made subject to the exercise by the department of parks of such other duties as the law devolves upon that department. The contract, as made, must be deemed to have been made in view of the possible exercise of that power, if it becomes necessary to exercise it. We are not advised of any principle which requires that this contract should be held to be void unless it shall appear that it has become obnoxious to some regulation or ordinance which has been enacted for the government of the parks. But the agreement is, in terms, subject to all rules, regulations, and ordinances now prescribed, or that might hereafter be prescribed, by the department, relating to the con-

duct of the privileges granted by it, and the general character of the fixtures, equipment, employés, and all things appertaining thereto, and to the general management and government of the park; and the plaintiff takes his contract subject to any such regulations. Even were no such provision in the contract, it would still be subject to any regulations or ordinances which the department of parks might see fit to enact for the better government of the parks, or the preservation of order in them, or for the performance in any other way of what might be called its "governmental functions." As to those matters it cannot by any such agreement abdicate its functions or abandon the duty which the law has put upon it, nor can this contract be so construed as to control in any way the management or the exercise of those functions.

In the case of Richmond County Gaslight Co. v. Town of Middletown, 59 N. Y. 228, the defendant, the town of Middletown, had been authorized by the legislature to make a contract for the laying of pipes, and the supplying of certain streets of the town with gas. The contract had been made for the period of five years, although the statute authorizing the making of it did not provide any particular time during which it might continue. After the making of the contract, the statute by virtue of which it was authorized was repealed. The town refused to pay for the furnishing of gas after the passage of the statute taking away the power to make the contract, and an action was brought by the gaslight company to recover the amount claimed to be due for gas supplied after that time. The town set up in defense the repeal of the law which authorized the contract, and insisted that by virtue of it the contract had become inoperative. This position was sustained by all the courts. In the court of appeals it was held that the town auditors, while they were authorized to make the contract, could not do any act which would affect the power of the legislature to take away the authority which it had given to the town to enter into this bargain, and, if the legislature saw fit to take away the power, the contract, which up to that time had been valid, would at once become inoperative, and that the plaintiff could not recover. It was said that the contract must be deemed to have been made in view of the power of the legislature to take away the authority to light the town with gas, and for that reason the exercise of that authority had put an end to the contract. Judge Grover, who delivered the opinion of the court, after having said this much, went on to say that it was in the discretion of the town auditors whether any, or what, portion of the town should be lighted with gas, that discretion was to be exercised at all times by them when the necessity arose, and that it was not competent for the board to make a contract for five years, and thus take away the discretion of its successors as to what portion of the town should be lighted by gas during that time; and therefore he insisted that the contract was void when signed. But this portion of the opinion was not concurred in by the remainder of the court. Three of the judges put their decision upon the ground that the action of the legislature had rendered the contract inoperative, and the other judges concurred in the result upon an entirely

different ground, which was not discussed in the opinion. The case therefore is no authority for holding that the contract was void from the beginning, but, on the contrary, if it is to be considered at all upon that subject, it is an authority the other way, because the court expressly refused to concur with Judge Grover's opinion on that point. The principle established in such cases is that where any municipal corporation, or body of officers of a municipal corporation, have the power to act in regard to the property owned by the corporation, and at the same time have authority to make regulations in their governmental capacity, whatever contract they make with regard to the private property of the corporation must be considered to have been made in view of the possible exercise of the power to make regulations and ordinances, and such ordinances, if made pursuant to the powers vested in the body by the legislature, will operate to put an end to the contract, if they are inconsistent with it, and the contract will cease to be effective. Such was the rule laid down by the supreme court in the case of Britton v. Mayor, etc., 21 How. Prac. 251. In that case the city had entered into a contract in relation to cleaning the streets for a specified time; and, in the exercise of the duties imposed upon the common council, an ordinance had been made, the effect of which was inconsistent with the further continuance of the contract. In an action upon the contract, the court held, not that it was void because it operated to restrain the discretionary powers of the common council, but that it was made and to be construed with reference to the probability that these powers would be exercised, and, if they were exercised in such a way as to render the contract inoperative, it was abrogated, and the city was not estopped from setting up such an ordinance in an action upon the contract. The same principle was applied in the case of Presbyterian Church v. City of New York, 5 Cow. 538, which seems to be the leading case upon that point in this state. That was an action for the breach of a covenant for quiet enjoyment made by the city with the plaintiff in a conveyance executed on the 25th day of February, 1766, by which certain premises were conveyed to the plaintiff upon an agreement that it should build a church thereon, or should use the premises as a cemetery, and the city covenanted that the plaintiff should have a quiet enjoyment of the premises, without any hindrance on their part or the part of any other person. The premises were used as a cemetery, and continued so as to be used until the year 1823, when, by virtue of an ordinance of the city which the common council had the power to enact, it was provided that land situated within certain boundaries should not be used for cemetery purposes. Those boundaries included the land which had been conveyed to the plaintiff for that purpose. The action was brought upon the covenant for quiet enjoyment, and the defendants justified their breach of the covenant by setting up the passage of the ordinance; and the question presented was whether the passage of the ordinance, which had the effect of avoiding the covenant previously made by the city, was a proper exercise of the power which the legislature had given to the city to make such ordinances. The court held that the covenant for quiet enjoyment in

the conveyance was to be construed precisely as such a covenant would be construed were it made between two individuals, and that such a covenant thus made between two individuals was always upon the implied condition that any act of lawful authority which interfered with the quiet enjoyment of the premises for the purposes for which they were conveyed operated to put an end to the covenant, and that the possibility of such an act must always be deemed to have been within the contemplation of the parties when the agreement was made. The same principle was applied in Coates v. City of New York, 7 Cow. 585, and later in the case of In re Opening of Albany Street, 6 Abb. Prac. 273. The latest case upon that point is Transportation Co. v. Shea, 30 App. Div. 266, 51 N. Y. Supp. 563. The facts appearing in that case were that the plaintiff was authorized to locate and operate tubes between the central post office and branch post offices in several cities of the state. In pursuance of that authority, it had determined to locate a pneumatic tube from the post office in the city of New York to the post office in the city of Brooklyn, and to that end had made a contract with the trustees of the New York and Brooklyn Bridge by which it had obtained the privilege for a term of years of maintaining that tube upon the bridge. The defendant, being the successor of that body, refused to permit the construction of the tube; insisting that such an act limited the power and discretion imposed upon him to regulate and manage the bridge with the greatest efficiency for public travel, which was the paramount object of its construction. The plaintiff thereupon brought an action against Shea to restrain him from interfering with the construction of the tube, and the question presented was whether the contract which the plaintiff had obtained from the predecessor of the defendant was valid, in the absence of some proof that it interfered with the actual exercise of the discretion of the defendant in the management of the bridge. The plaintiff claimed that it had acquired, by virtue of the act of the legislature, the absolute right to lay its tube along the bridge, without any consent or authority from the officers in charge of it. But this proposition was repudiated by the court, which said that the right of the plaintiff to lay its tube upon the bridge must be found, if at all, in the contract made with the board of trustees, the predecessor of the defendant. It was not claimed there, as it is not claimed here, that the privilege granted to the plaintiff had operated in any way to interfere with the convenience of the public, or limited the purpose for which the bridge was created; nor was it claimed that the defendant had made or purposed to make any regulation or rule with the operation of which the presence of the pneumatic tube would interfere. It was insisted simply that, because the defendant might in the future desire to make some such regulation, the presence of these tubes might be an impediment to the operation of the regulations so made, and therefore the tubes should not be laid. That argument was met by the court by saying that:

"If at any time the plans of the authorities in the control of the bridge, made in good faith, require a change in the location of the plaintiff's tube line, or even a total abrogation of its privilege, the plaintiff must submit. Its con-

tract, and all similar contracts, must be construed as made subject to what we may term the governmental or legislative power of the bridge authorities over its public use. But as long as similar privileges are granted, and operate in no way to the detriment of the public travel upon the bridge, they are properly the subject of contract, and cannot capriciously or unreasonably be taken away."

This case is precisely in point in the case at bar. By the terms of the agreement between the plaintiff and the department of parks, he holds this privilege subject to all regulations and ordinances now prescribed or that may hereafter be prescribed by the department as to the general management and the government of the park. So long as there is no regulation which necessarily interferes with his conduct of this restaurant, or so long as it is deemed best that a restaurant should be kept up at Claremont, so long the plaintiff is entitled to the privileges of the contract which he has obtained, and for which he has spent a large amount of money; and the defendant will not be permitted, without reason and at its mere caprice, to interfere with his rights. But if, at any time in the future, it shall determine in good faith to take away the restaurant, the plaintiff must submit, because he takes his agreement subject to the power which the law has given him to make these regulations. Until, however, some such regulation is made, the plaintiff has the right to his contract, and to the protection of the court to prevent any capricious or unnecessary interference with it.

We have examined the exceptions taken to the rulings of the court in the rejection of evidence offered by the defendant, and we do not find that any of them are material in this case. Upon the whole case, we are of the opinion that the judgment was right, and should be affirmed. All concur, except BARRETT, J., dissenting.

BARRETT, J. (dissenting). I regret my inability to concur with my brethren in this case. The contract in question, so far as it attempted to confer upon the plaintiff the privilege of selling refreshments in the Riverside Park for a term of five years, was, in my judgment, an illegal exercise of power on the part of the department of parks. If ever there was a purely governmental power, we find it here. There is not in the purpose of this contract the slightest trace of private benefit. Indeed, there could be none. It is true that the plaintiff pays for the privilege conferred, and that the city receives the agreed compensation. That, however, does not affect the inherent character of the contract. Its sole object is to provide for the pleasure, comfort, and convenience of the public at large within the park area. That also is its declared object. It recites that it is made "in order to promote and increase the public enjoyment of the public park known as 'Riverside Park,'" and that is a purely governmental function. The head of the park department cannot contract away his continuous duty to determine what will contribute to the pleasure, comfort, or convenience of the general public. He may provide music to-day, discontinue it to-morrow, and provide it again the next day. He may choose one musical director or a brass band one day; another musical director and an ordinary orchestra, another. And he can

lawfully make no contract which, by conferring legal rights upon the person contracted with, will foreclose the exercise of his continuous judgment with regard to the subject-matter. The same view appertains to every source of pleasure, convenience, or comfort within the park area. The park commissioner may provide boats upon the lake, or goat carts and ponies for the children. But he can make no contract upon these subjects which will prevent his discontinuing the service or changing the personalities connected therewith whenever he thinks the public good will be promoted by such discontinuance or by such change. He may provide for general refreshments at one time, or limit them to a glass of milk at another. He may permit wines and spirits to accompany general refreshments, or he may abolish the sale of wines and spirits altogether, or he may change the agent who is licensed to provide the permitted refreshments, and select another. What may seem useful in one view of the park's conditions may, in the practical working of the system, turn out to be harmful or useless. It is for the park commissioner to watch the working of the system and the agents to whom it is intrusted, and continue, discontinue, or vary system or agent according to his best judgment. He cannot so contract as to limit the full and free exercise of his judgment with regard to the subject-matter.

These views are, as it seems to me, supported by a long and practically unbroken line of authorities. It has been repeatedly held, not only that a municipality may not directly barter away its legislative or governmental powers, but that it may not enter into contracts the result of which is to control or hamper the exercise of such powers. Gale v. Village of Kalamazoo, 23 Mich. 344; Milhau v. Sharp, 27 N. Y. 611; Britton v. Mayor, etc., 21 How. Prac. 251; Matthews v. City of Alexandria, 68 Mo. 115; Lord v. City of Oconto, 47 Wis. 386, 2 N. W. 785; Rittenhouse v. Mayor, etc., 25 Md. 336; 1 Dill. Mun. Corp. (4th Ed.) § 97. If such is the effect of a contract, it is void. In such a case it is quite immaterial whether it appeared to be reasonable and to subserve the public interest at the time it was made. As was well said by Judge Cooley in Gale v. Village of Kalamazoo, supra:

"It is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers and precludes itself from meeting in a proper way the emergencies that may arise."

The observations of Judge Grover in Richmond County Gaslight Co. v. Town of Middletown, 59 N. Y. 228, are peculiarly applicable to the case at bar, and I entirely concur in them, though they seem not to have formed the actual ground of decision in that case. Speaking of an act which, in general terms, granted to the defendant's board of town auditors the power to contract with the plaintiff to supply it with gas, the learned judge said:

"Under the act of 1865, the existing board of town auditors had no power, once for all, to determine that certain streets should be lighted for a great number of years, and deprive those who should succeed to their places of all control over the subject, by entering into a contract with the plaintiff for this long term. An examination of the act shows that it was intended to vest a

58 N.Y.S.—62

discretion at all times in the board whether any, and which, of the streets should be lighted with gas. The board could therefore contract for a supply only during its pleasure. When a majority, either from a change of views of its existing members, or the opinion of some of their successors, thought it best to discontinue the light in some or all of the streets, they could not be devested of the power so to do by a previous contract entered into for a supply of gas."

I cannot but think the conclusion arrived at in the majority opinion is a dangerous one, and that, if carried to its logical end, it may lead to an extensive farming out of these subjects of continuous governmental direction. The moment a vested private right is interposed between a public authority and the right to exercise its legislative or quasi legislative powers, the entire governmental system necessarily fails. But it is said that the plaintiff has no such vested right, and that the privilege conferred upon him is subject to regulation by the park department, or even to be abrogated entirely in case it is determined to have no restaurant in the park. It is, however, asserted in the prevailing opinion that, "so long as it is deemed best that a restaurant should be kept up at Claremont, so long the plaintiff is entitled to the privileges of the contract." If that is so, what becomes of the suggested power of regulation? You cannot well regulate what you cannot change. And, so long as the plaintiff fairly performs his contract, he cannot, under the majority opinion, be denied its privileges. But why not? Simply because—so it is held—he has a contract right of which he cannot be deprived, and which can only be regulated by the terms of the contract itself, and not at all by the exercise of an independent governmental power. Thus, the commissioner is powerless to require, even when public taste demands it, a higher order of service, or an agent more highly equipped to furnish that service. The contract for the lower order of service, and for the particular, and, to the commissioner's mind, inferior, agent who is to furnish it, must, at least for five years of good contract service, stand in the way. Thus, progress, under independent governmental power, is to be blocked by private contract right. It comes to this,—that if the commissioner is prevented by this contract from removing the plaintiff, and substituting another and better restaurateur in his stead, he is simply prevented from performing his duty as park commissioner. If, however, he has the power of removal, then it seems clear that he has merely exercised that power, The dismissal of the plaintiff, like his original appointment,—for in this view it was in substance an appointment,—was a governmental act; and neither the commissioner nor his predecessors could preclude him from thus proceeding within his jurisdiction. My conclusion is that the utmost that the park commissioners here could lawfully grant was a license revocable whenever they deemed that the public pleasure, convenience, or comfort would be promoted by a discontinuance of the service, or by a change in the agent connected therewith. I think the judgment should be reversed, and the complaint dismissed.