Argued September 29; reversed December 13, 1932; rehearing
denied January 24, 1933

SEAFELDT *v.* PORT OF ASTORIA ET AL.

(16 P. (2d) 943)

G. C. *Fulton*, of Astoria (A. C. Fulton, of Astoria, on the brief), for appellants.

H. B. *Beckett*, of Portland (Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for respondent.

RAND, J. This suit was brought by a taxpayer to enjoin the Port of Astoria and its officers from performing a contract which it had entered into with the Tacoma Dredging Company by which it had agreed to do certain dredging work on two bars in the Willamette river, which work that company had agreed to do for the United States of America. The case is here upon an appeal from a decree enjoining the defendants from performing such work.

It appears from the evidence that on December 16, 1931, the Tacoma Dredging Company entered into a contract with the federal government to dredge two bars in the channel of the Willamette river and that said company then entered into a contract with the Port of Astoria in and by the terms of which the Port of Astoria agreed to furnish to the Tacoma Dredging Company for the doing of such work its dredge and the workmen employed thereon, and to receive in payment therefor $550 for each day of 24 hours continuous operation and, in addition thereto, an allowance of $300 for the towing of the dredge to and from the place of work.

It is alleged in the complaint that the port had no power or authority to enter into the contract or to perform the same, and that performance thereof will re-result in loss and damage to the port.

It appears from the evidence that the place where the work is to be done is not within the limits of the port nor between its limits and the sea but is one hundred miles or more from the situs of the port, and that to transport the dredge to the place of work will necessitate the towing of the dredge up the Columbia river to the mouth of the Willamette river and from thence up said river to the place where the work is to be performed. Both of said streams between said points are navigable for the entire distance.

The Port of Astoria is a municipal corporation. It was organized under and pursuant to the provisions of the general laws of this state and possesses all the powers conferred by sections 65-701 to 65-1105, Oregon Code 1930, and such additional powers as are granted by sections 65-801 to 65-813, Oregon Code 1930.

■ It is well settled that all acts beyond the scope of the powers granted to a municipality are void, and that, in construing the extent of the powers of a municipality, any fair, reasonable or substantial doubt as to the extent of the power is to be determined in favor of the public: *City of Corvallis v. Carlile,* 10 Or. 139 (45 Am. Rep. 134); *Cole v. Seaside,* 80 Or. 73 (156 P. 569); *Chapman v. Hood River,* 100 Or. 43 (196 P. 467). But as said in *Chapman v. Hood River,* supra:

"It is likewise a rule of construction that grants of power are not to be so construed as to defeat the intent of the legislature or to withhold what is given either expressly or by necessary and fair implication."

In *City of Corvallis v. Carlile,* supra, Mr. Chief Justice Lord quoted with approval from *Minturn v. Larue,* 23 How. 430 (16 L. Ed. 574), as follows:

"It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant. * * *"

In Dillon on Municipal Corporations (5th Ed.) section 237, the author says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable."

The powers granted to ports under the provisions of the statutes referred to are very broad and comprehensive. They are empowered to do innumerable things, as will be seen by a reading of those sections. Among those granted in express words is the power to "make all contracts, hold, receive, and dispose of real and personal property, and do all other acts and things which may be requisite, necessary, or convenient in carrying out the objects of said corporation or exercising the powers conferred upon it, etc.": Section 65-707. "* * * generally to do and cause to be done all things necessary and convenient, whether herein expressed or not, to successfully carry out the powers herein granted": Subd. 5, section 65-708. "In general to do such other acts and things as shall tend to pro-

mote the maritime shipping and commercial interests of such corporation and to acquire, hold, use, enjoy and dispose of and convey such real and personal property, and to make any and all contracts, and to do any and all other acts and things which may be or may become requisite, necessary or convenient in carrying out all or any one or more of the powers in this act granted it'': Subd. 7, section 65-708.

■ In law, ships have always been regarded as personal property and not real property. 1 Parsons on Shipping and Admiralty, 24. This dredge, of course, is not a ship in the ordinary sense of the term but, although differing therefrom and used for an entirely different purpose, it partakes somewhat of the nature of a ship in that it floats and is used only on water. It has none of the characteristics of land and, in contemplation of law, like ordinary vessels, is personal property. This dredge is public property but it belongs to the port and not to the inhabitants thereof: *Kinney v. Astoria,* 108 Or. 514, 530 (217 P. 840).

■ Ports, like other municipalities, act in a dual capacity. In one they exercise governmental functions, in the other private, proprietary or purely municipal functions. While it is difficult to draw the line of distinction between governmental functions and powers and private or proprietary functions, they are clearly separate and distinct.

''While in a certain sense any municipal function might be regarded as governmental, when properly applied the term 'governmental functions' should be limited to legal duties imposed by the state upon its creature, which it may not omit with impunity but must perform at its peril.''

''All functions of a municipal corporation, not governmental, are strictly municipal.''

43 C. J. sections 178-180.

█ The dredge in question was held by the port not in its governmental but in its proprietary capacity. It had never been devoted to a public use in the sense in which land is appropriated and devoted to a public use, nor was it held in trust for the benefit of the people of the state as a whole. It, therefore, was not property which could be alienated only by the express consent of the legislature or upon the discontinuance of the public use in the manner provided by law. Property held by a municipal corporation in its private or proprietary capacity ordinarily may be alienated without the consent of the legislature. 19 R. C. L. 773. As there said: "* * * property which has ceased to be used by the public, or has never been devoted to any public use may be sold by the municipality owning it, by virtue of its implied powers," or, as stated by McQuillin:

"* * * All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use. In other words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute or charter; and this power is an incidental power inherent in all corporations, public or private. * * * So land bought for a public purpose, if not actually so used, cannot be said to be affected by a public trust, and hence may be sold." 3 McQuillin on Municipal Corporations (2d Ed.), section 1242. See also 43 C. J., 1340.

The right of a port to regulate and control the use of a dredge owned by it is a necessary incident of its ownership.

The power expressly conferred upon ports by the statutes under which they are constituted to acquire, hold, enjoy and dispose of personal property is broad enough to empower the sale or disposal of the dredge and, hence, it is not necessary to seek authority elsewhere than in the act itself.

■ The contract the performance of which is sought to be enjoined in this suit is not a contract to sell the dredge but to hire out its use and the labor of its operators for a compensation deemed adequate by the board of commissioners of the port. The amount and the nature of the consideration received by the board in exchange for the use of its dredge and for the labor of its operators, since it had the power to authorize such use, was a matter that concerned the port only: *Roberts v. Northern Pacific R. Co.,* 158 U. S. 1 (15 S. Ct. 756, 39 L. Ed. 873).

■ It is well settled that a court of equity will not interfere at the suit of a taxpayer to restrain the officers of a municipal corporation in the exercise of their discretionary powers with regard to the control or disposition of the property of the municipality in the absence of illegality, fraud or clear abuse of their authority: 28 A. & E. Encyc. of Law, 991; 28 Cyc. 1744; 44 C. J. 1411; *Haesloop v. City Council of Charleston,* 123 S. C. 272 (115 S. E. 596).

■ The contention that because of the provisions of the act under which ports are organized, expressly authorizing such ports to improve the rivers, bays and harbors within their limits and between those limits and the sea, and also to enter into contracts with the government of the United States, the legislature intended to limit their powers to contract only for the doing of work by a municipally-owned dredge within such limits

and to contract for the use of it only with the government of the United States, we do not think to be tenable under the facts of this case. In order to so hold it would be necessary to apply the rule of *expressio unius est exclusio alterius*. The specific powers referred to constitute only a small part of the powers conferred upon ports and the enumeration of them, we think, was intended to extend the power rather than limit it, under the rule applied in *Grubbe v. Grubbe,* 26 Or. 363 (38 P. 182), and was not intended to prevent the port from entering into other contracts or to hire out the use of its dredge when not presently needed for municipal purposes, whether such contemplated use was within or without such limits.

■ Hence, we hold that while the court may properly grant an injunction where the conduct of the municipal authorities amounts to a manifest abuse of their discretion, or of fraud upon the rights of the taxpayers (44 C. J. 1411), the power did not exist in the instant case in the absence of some allegation or proof of fraud or a manifest abuse of discretion and that, while a port is without power to purchase a dredge for the mere purpose of renting it out, yet, after it has lawfully purchased the same for municipal purposes, it has the power to contract for its use by others and to furnish the labor for its operation for a limited period of time and for a lawful use when the dredge is not presently needed for municipal purposes.

For these reasons, the decree of the lower court must be reversed and a decree will be entered here dismissing the suit, and it is so ordered.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.