Argued May 5, reversed May 26, petition for rehearing
denied June 22, 1965

PULLEN ᴇᴛ ᴀʟ *v.* OREGON INDUSTRIAL
DEVELOPMENT CORPORATION ᴇᴛ ᴀʟ

402 P. 2d 240

*John R. Faust, Jr.,* Portland, argued the cause for
appellants. With him on the briefs were William
E. Love, Cake, Jaureguy, Hardy, Buttler & McEwen,
and Lenon & Willner, Portland

*James H. Clarke,* Portland, argued the cause for

respondents. With him on the brief were William G. Dick, and Dick & Dick, The Dalles, and Koerner, Young, McColloch & Dezendorf and Edwin L. Graham, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

This case involves a problem created by the inundation of the city of Arlington by the waters impounded by the John Day Dam. The problem concerns the plan adopted by the city government to relocate the business section of the city. We have been unable to find reference to a counterpart of this particular situation.

It appears from the record that the city council has considered various plans to provide for the relocation of the business community. None of the plans were acceptable to the council until the one involved in this litigation was adopted. By this plan the city purchased from the Federal government a tract of land which was to be developed for the new business area. The money used by the city to buy the land was provided by the defendant Oregon Industrial Development Corporation (referred to in the record and here as OID). Upon receipt of the deed to the land from the Federal government the city caused a plat of the land to be approved and filed. This plat dedicated about one-third of the real property for essential public uses. The remainder of the property was conveyed to OID for the sale of the platted lots to those

who desired them for business use. None of the property involved in this litigation was intended for any other use than for private business.

The city also entered into an agreement with OID in respect to the sale of the platted lots to persons desiring to acquire the lots. The agreement, plus a later supplemental agreement, imposed certain priorities and other limitations upon the sale of the lots to private owners. The taxpayers who initiated this declaratory judgment proceeding claim that the transaction was invalid and ask that it be set aside. The trial court agreed and set aside the sale of the land to OID. Defendants appeal.

Plaintiffs present several reasons to support their cause. All of them are premised on plaintiffs' theory that the creation of a new business community was a public responsibility of the city government and, accordingly it was imperative that the city sell the lots individually and not sell the property to a private corporation and permit the latter to sell the lots to the individuals who may desire them. As a part of the theory plaintiffs say it was the compelling duty of the city to provide

"* * * that the development should be planned and controlled to produce a 'model city center.' This required detailed restrictions as to building construction and location, property use and public areas to prevent a disorganized or inadequate district from resulting. * * *."

The ultimate question, however, is: Was this property and its purpose so vested with a public interest that it could not be sold as authorized by ORS 271.310? The statute permits a political subdivision of this state to sell "* * * real property not needed for public use, or whenever the public interest

may be furthered \* \* \*." If the property was not needed for public use the sale was valid. Plaintiffs contend that the need for a well-planned business center was such a public use.

As we view the case, the matter of planning is not involved. It was not necessary for the city to be engaged in the sale of individual lots to accomplish this purpose. That could be accomplished, we assume, by zoning or other restrictive measures. The real problem faced by the city was to decide whether it should enter the real estate business or whether it should adopt the policy at issue here. Plaintiffs have not sustained the burden they assumed of proving that the city's action was invalid.

The cases cited by plaintiffs which sustain the power of a city to engage in such a business are beside the point. We assume that the city could have lawfully pursued that course. But that is not to say that the city can be compelled to. By analogy it can be said that if a city has the power to adopt and enforce zoning regulations it does not mean that a citizen can compel it to do so.

We recognize that the distinction between a public and private municipal use is sometimes a difficult one. 3 Antieau, Municipal Corporation Law, 1964, § 20.19, page 74.2 et seq., which sites *Seafeldt v. Port of Astoria,* 1932, 141 Or 418, 16 P2d 943. The *Seafeldt* case is frequently cited as authority that a public corporation may sell non-public property. It cites with approval this statement from McQuillin:

"'\* \* \* All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use. In other

words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title, and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute or charter; and this power is an incidental power inherent in all corporations, public or private. * * * So land bought for a public purpose, if not actually so used, cannot be said to be affected by a public trust, and hence may be sold.' 3 McQuillin on Municipal Corporations (2d Ed.), section 1242." *Seafeldt v. Port of Astoria,* 1933, 141 Or 418, 16 P2d 943.

The statute, ORS 271.310, enacted in 1935, makes the rule more definitive.

Plaintiffs have cited *Foeller v. Housing Authority of Portland,* 1953, 198 Or 205, 231 et seq., 256 P2d 752, to support their argument. *Foeller* held that the improvement of a certain blighted area is vested with a public interest. In that case, however, the public interest was found to be not only the immediate purpose of removing conditions which contributed to health, safety and moral problems; it was held to be of equal importance to prevent the growth of similar problems in the future. See also *Davis v. City of Lubbock,* 1959, 160 Tex 38, 326 SW2d 699, for another comprehensive opinion premised on the same standards of prevention of community and property degeneration. It must be emphasized that these, and similar cases, merely say what a city can do, not what it must do. We have found no authority which holds that a taxpayer can compel a city to engage in the activity demanded here.

However desirable it may have been for the city to have fulfilled the purpose presented by plaintiffs, we can find no authority which sustains plaintiffs'

right to compel it. The choice was one that the city council had the power to make. It is not for a court to overrule its judgment.

The judgment and decree of the trial court must be set aside and a decree entered dismissing the complaint.