2001 WY 115

**Robert L. KROENLEIN and Betty Kroenlein, Appellants (Plaintiffs),**

v.

**James A. EDDINGTON; Ronald D. Hill; Tony L. Marlatt; 77 Capital Corp., a Wyoming corporation; and The Town Council of the Town of Torrington, Wyoming, Appellees (Defendants).**

No. 00–134.

Supreme Court of Wyoming.

Dec. 5, 2001.

Representing Appellants: Eric M. Alden, Wheatland, WY.

Representing Appellees James A. Eddington, Ronald D. Hill, Tony L. Marlatt, and 77 Capital Corp.: Donald J. Keenan of Keenan Law Office, Riverton, WY.

Representing Appellees The Town Council of the Town of Torrington, Wyoming, and James A. Eddington, in his official capacity: Stuart R. Day and Susan Chapin Stubson of Williams, Porter, Day & Neville, P.C., Casper, WY. Argument by Ms. Stubson.

Before LEHMAN, C.J.; GOLDEN and KITE, JJ., and SPANGLER, District Judge, Retired.

GOLDEN, Justice.

[¶ 1] This appeal requires that we consider various issues arising from passage of an annexation ordinance and the issuance of a liquor license. Appellee the Town Council of the Town of Torrington (Town Council) passed an annexation ordinance for property belonging to Appellees Eddington, Hill, Marlatt (property owners), 77 Capital Corp. Before the annexation was effective, the property owners applied for a retail liquor license. Appellants Robert L. Kroenlein and Betty Kroenlein (Kroenleins) sought a declaratory judgment that the annexation ordinance and liquor license were void because statutory requirements were not properly followed, and Appellee Eddington, Torrington's town attorney, had participated in the decision-making process despite a conflict of interest. The district court ruled that because the initial liquor license had expired by passage of time, any questions regarding issuance were moot. It further determined that the annexation ordinance was properly enacted pursuant to Wyo. Stat. Ann. § 15-1-407. Summary judgment was entered in favor of all appellees.

[¶ 2] Kroenleins' appeal requires that we determine whether the mootness doctrine precludes review of procedural defects in issuing a liquor license; whether a town attorney is prohibited from holding a liquor license either by statute or conflict of interest; and whether the annexation ordinance is valid. We affirm.

## ISSUES

[¶ 3]   Kroenleins present this statement of the issues:

1.   Are defects in the original issuance of a liquor license rendered moot by its renewal during the course of litigation?

   a.   Procedural defects which do not recur on renewal

   b.   Jurisdictional defects which remain at renewal

2.   Is the annexation procedure provided in W.S. § 15–1–407 subject to the requirements of § 15–1–403(c) and (d) and the findings required by § 15–1–402(a) and other annexation statutes?

3.   Is a prosecuting attorney a person prohibited from holding a liquor license under W.S. § 12–4–103(a)(ii)?

4.   May a person prohibited by W.S. § 12–4–103 from holding a liquor license avoid that prohibition by holding through a corporation?

Appellees James A. Eddington, Ronald D. Hill, Tony L. Marlatt, and 77 Capital Corp. restate the issues to be:

   A.   Did renewal, without objection from Appellants, of the liquor license issued by Appellee Town of Torrington to Appellee 77 Capital Corp. render issues raised concerning the initial licensing proceedings moot?

   B.   Did Appellee Town of Torrington effectively annex lands belonging to Appellees Eddington, Hill and Marlatt?

   C.   May a town attorney own a significant interest in a corporation holding a liquor license issued by the town?

Appellees Town Council of the Town of Torrington and Eddington, in his official capacity as Town of Torrington attorney, present these issues:

   A.   Did the District Court err in ruling that the Wyoming Statutes provide three separate and distinct avenues by which property may be annexed into a town or city and the Torrington Town Council fully and fairly met the requirements for annexation under Wyo. Stat. § 15–1–407 (Lexis 1999) and therefore the annexation of a particular parcel was proper?

   B.   Did the Appellants come before this Court with "clean hands" even though they admitted in the record that they knew about the annexation and liquor license proceedings and failed to timely respond to requests for public comment?

   C.   Do Appellants, as parties who only have a threat of economic competition and who were otherwise not involved in the annexation and liquor licensing process, having standing to contest the validity of the Torrington Town Council's actions?

   D.   Did the District Court err in finding that the issue of whether or not a liquor license was properly issued was rendered moot in light of the Torrington Town Council's subsequent renewal of the liquor license?

## FACTS

[¶ 4]   Kroenleins' complaint arose following the annexation of property and the issuance of a liquor license for that property by the Town Council.   On July 17, 1997, 77 Capital Corp. purchased a tract of real property known as the truck stop parcel.[1]   Appellees Eddington, Hill, and Marlatt are shareholders of 77 Capital Corp. On June 26, 1998, 77 Capital Corp. transferred the truck stop parcel to Eddington, Hill, and Marlatt.   On July 28 or 29, 1998, 77 Capital Corp. applied to the Town Council for the issuance of a retail liquor license for the parcel.   At the time of the filing of the application for the liquor license, that location was not within the Town of Torrington's corporate limits.

[¶ 5]   On August 3, 1998, Eddington, Hill and Marlatt petitioned the Town Council to annex the truck stop parcel pursuant to Wyo. Stat. Ann. § 15–1–407.   On September 1, 1998, the Town Council passed and approved on third and final reading Ordinance No. 946, which annexed the truck stop parcel in the corporate limits of Torrington pursuant to Wyo. Stat. Ann. § 15–1–407.   No publication

---

1.   Approximately 10.39 acres located in Section 14 of Township 24 North, Range 61 West, Goshen County, Wyoming.

of Ordinance No. 946 occurred before September 4, 1998, but on that date a public notice was published in the Torrington Telegram. On September 2, 1998, a liquor license was issued to 77 Capital Corp. for the truck stop parcel. On February 18, 1999, the Town Council, after proper publication and notice, reissued a retail liquor license to 77 Capital Corp.

[¶ 6] Kroenleins are residents and property owners in Torrington and also hold a retail liquor license. On September 10, 1998, Kroenleins filed a complaint against the owners, 77 Capital Corp., and the Town Council seeking a declaratory judgment that the annexation and issuance of the liquor license were invalid for violation of statutes. The Kroenleins further alleged that Eddington, Torrington's town attorney, had a conflict of interest and had thus acted improperly by advising the Town Council regarding the liquor license and annexation applications. Based on these alleged improprieties, their complaint requested class action status for competing retail liquor license holders to recover compensatory and punitive damages.

[¶ 7] Kroenleins filed three separate motions for partial summary judgment. The district court denied all three and entered judgment for the defendants on these three motions and later on all remaining motions. This appeal followed. The relief it seeks is limited to a declaration that the Town Council's annexation ordinance and liquor license issuance are void.

## DISCUSSION

### Standard of Review

[¶ 8] "When this Court reviews a summary judgment denying a petition for a declaratory judgment, we invoke our usual standard for review of summary judgments." *Fontaine v. Board of County Comm'rs of Park County*, 4 P.3d 890, 892 (Wyo.2000). In this instance, there is no contention that any genuine issue of material fact exists, and our concern is strictly with the application of the law. Questions of application of the law, including statutory interpretation, are considered *de novo*. *Anderson Highway Signs and Supply, Inc. v. Close*, 6 P.3d 123, 124

(Wyo.2000). If the summary judgment can be affirmed under any proper legal theory presented in the record, we will do so. *Fontaine*, 4 P.3d at 892.

[¶ 9] We have often stated our rules of statutory interpretation. In interpreting statutes, we primarily determine the legislature's intent. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n*, 845 P.2d 1040, 1044 (Wyo.1993). If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous. If the statute's language is clear and unambiguous, we apply its plain meaning and need not consult the numerous rules of statutory construction. *Id.* at 1043.

### Standing

[¶ 10] The Town Council contends that Kroenleins do not have standing to challenge the annexation and liquor license process. In a declaratory judgment action, a party does not have standing to contest issuance of a liquor license by virtue of the party's status as a competitor. *State ex rel. Bayou Liquors, Inc. v. City of Casper*, 906 P.2d 1046, 1050 (Wyo.1995). A party does have standing as a resident even though he or she is a competitor. *Id.* A resident has standing to contest issuance of a liquor license for those purposes set forth in Wyo. Stat. Ann. § 12–4–104(b)(iv), namely, "that actions which seek to ensure that licenses are issued, renewed or transferred in compliance with the liquor code and local ordinances fit within the broad purpose enunciated by the statute." *Id.* Residents have a strong interest in seeing compliance with the law. *Id.* The record shows that Kroenleins are residents of the Town of Torrington and had standing to contest the issuance of the liquor license.

[¶ 11] Similarly, Wyo. Stat. Ann. § 15–1–409(a) provides standing to resident property owners if aggrieved by the acts of the governing body because of a failure to comply with the annexation statues. *See Town of Marbleton v. Town of Big Piney*, 719 P.2d 1389, 1390 (Wyo.1986). The statute states:

(a) If any landowner in the territory proposed to be annexed or any owner of real property in the annexing city or town, or utility is aggrieved by the acts of the governing body, he may appeal to the district court for a review of the acts or findings thereof.

Wyo. Stat. Ann. § 15–1–409(a) (LexisNexis 2001).[2] As resident property owners, Kroenleins have standing to challenge annexation under the statute.

*Validity of Liquor License*

[¶ 12] Kroenleins complained that the liquor license issued to defendants was invalid because it was issued before the truck stop parcel had been annexed and statutory notice requirements were not followed. The trial court found that these complaints, though meritorious, were now moot because the liquor license had since been properly renewed without Kroenleins' objection. The trial court granted summary judgment to defendants.

[¶ 13] In *Bard Ranch Co. v. Frederick*, 950 P.2d 564, 566 (Wyo.1997), we said:

Our general law on justiciability provides that courts should not consider issues which have become moot. *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Comm'n*, 693 P.2d 227, 233 (Wyo.1985). We do not decide cases when a decision will have no effect or pertains only to matters that might arise in the future. *McLain v. Anderson*, 933 P.2d 468, 472 (Wyo.1997). A case is moot when the determination of an issue is sought which, if provided, will have no practical effect on the existing controversy. *Id.* Therefore, if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it. *Id; see also Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.*, 773 P.2d 911, 924–25 (Wyo. 1989).

We have previously held that the mootness doctrine bars review of the validity of a liquor license that has since expired by the passage of time. *State ex. rel. Schwartz v. Jones*, 61 Wyo. 350, 364, 157 P.2d 993, 997 (Wyo.1945). On appeal, Kroenleins do not contend that this ruling was in error. However, they argue that the mootness doctrine does not apply to the questions of whether the defendants validly hold the license because annexation was void and because a town attorney is prohibited from holding a liquor license both by statute and conflict of interest. These assertions require statutory interpretation, and we will address these issues.

*Annexation Statutes*

[¶ 14] Kroenleins seek to void the annexation ordinance passed by the Town Council. The governing body of a city or town may annex property by petition of a majority of landowners, by petition of the governing body, or by the petition of all owners of the land to be annexed. Wyo. Stat. Ann. §§ 15–1–403, 404 (LexisNexis 2001); Wyo. Stat. Ann. § 15–1–407 (Michie 1997). Kroenleins contend that the trial court erred in granting summary judgment to appellees after determining that the Town Council properly granted annexation under § 15–1–407, which provides:

If the city is the sole owner of any territory whether or not contiguous that it desires to annex, or **if all of the owners of such land sign a petition to annex, the governing body, by ordinance, may annex the territory to the city or town without notice or public hearing** as provided in W.S. 15–1–405 and without preparing the annexation report or providing the estimates required by W.S. 15–1–402(c) and (e) and 15–1–404(a)(ii)(C) and (D). All ordinances annexing territory without notice and public hearing shall contain a statement that the territory is solely owned by the petitioning city or town or that all of the owners of the territory have signed a petition requesting annexation.

Wyo. Stat. Ann. § 15–1–407 (Michie 1997)[3] (emphasis added).

**2.** The statutes cited in this opinion have not changed since annexation of said parcel was approved in 1998 unless otherwise indicated.

**3.** In 2001, this statute was amended and the language "or if all of the owners of such land sign a petition to annex," and "or that all of the

[¶ 15] Kroenleins contend that failure to comply with the petition requirements set forth in Wyo. Stat. Ann. § 15–1–403(d) caused the Town Council to annex land not owned by "landowners" as defined in Wyo. Stat. Ann. § 15–1–401. They claim that § 407 does not provide an independent means of initiating annexation by owners of property that are not landowners which § 401 defines as "the owner of real property in the territory proposed to be annexed who in the last calendar year was liable for property tax thereon." Wyo. Stat. Ann. § 15–1–401(a)(ii) (LexisNexis 2001) states:

"Landowner" means the owner of real property in the territory proposed to be annexed who in the last calendar year was liable for a property tax thereon or was exempt by law from the payment of taxes on the property. Anyone having a right to purchase land under a written contract is the owner of that land for annexation purposes. For purposes of W.S. 15–1–402, 15–1–404 and 15–1–405 "landowner" shall include persons owning property which, as a result of the proposed annexation would then be brought within one-half (½) mile of the corporate limits of a city which has exercised the authority granted under W.S. 15–3–202(b)(ii)[.]

Wyo. Stat. Ann. § 15–1–403 (LexisNexis 2001) states:

(a) The proceedings for annexation of eligible territory may be initiated by a written petition filed with the clerk of the city or town to which annexation of the territory is proposed, after compliance with the following conditions and procedures:

(i) The petition is signed and dated by a majority of the landowners owning a majority of the area sought to be annexed, excluding public streets and alleys and tax exempt property;

(ii) The petition contains the following detailed information:

(A) A legal description of the area sought to be annexed;

(B) A request that the described territory be annexed;

owners of the territory have signed a petition

(C) A statement that each signer is an owner of land and a description of his land within the area proposed to be annexed; and

(D) A map of the area.

(b) No signature on the petition is valid if it is dated more than one hundred eighty (180) days prior to the date of filing the petition with the clerk. No person signing a petition for annexation may withdraw his signature from the petition after it has been filed with the clerk.

(c) The clerk shall refer the petition to the governing body which, without undue delay, shall take appropriate steps to determine if the petition substantially complies with this article.

(d) If the petition complies, the governing body shall adopt a resolution certifying compliance, and the procedure outlined in W.S. 15–1–402, 15–1–405 and 15–1–406 shall then be followed. If it does not comply the petitioner shall be notified that no further action will be taken on the petition until compliance is made.

[¶ 16] We disagree with Kroenleins' position and agree with the district court that § 407 is an independent means by which property "owners" can petition for annexation. Plainly, § 407 provides for an annexation method that does not require identifying "landowners" or applying the petition compliance procedures found in § 403. It foregoes those procedures and chooses instead to solely rely upon the requirement that the ordinance provide a statement that all owners of the territory have signed a petition requesting annexation. An annexation ordinance that failed to comply with this requirement would be subject to district court review and could be declared void under Wyo. Stat. Ann. § 15–1–409(b) (LexisNexis 2001), which states:

(b) If the court determines that the action taken was capricious or arbitrary, or if it appears from the evidence that the landowner's right in his property is being unwarrantedly invaded or that the governing body abused its discretion, the court shall declare the annexing ordinance void. If

requesting annexation" was deleted.

the court determines the action of the governing body was proper and valid, it shall sustain the ordinance.

[¶ 17] Kroenleins do contend that the statement of ownership in the ordinance failed to comply with § 407. The ordinance stated:

That James A. Eddington, Ronald D. Hill and Tony L. Marlatt are the owners of real property set forth below and said real property is annexed into the corporate limits of the Town of Torrington pursuant to W.S. § 15-1-407.

We agree that this statement does not say that "that all of the owners of the territory have signed a petition requesting annexation." The statutory purpose behind requiring this statement is obviously to show the governing body's jurisdiction to annex the property. Here, we will find that referencing the applicable statute substantially complies with the statutory requirement, and this variation does not require declaring the ordinance void. *See Miller v. Town of Mills,* 590 P.2d 378, 380-81 (Wyo.1979) (failure to comply with annexation statutory requirements is not necessarily a fatal deficiency).

[¶ 18] Kroenleins' point, however, appears to be that the Town Council and the owners gave short shrift to the purpose behind the procedural requirements, namely, protection of the public interest. The public interest concerns are enumerated in Wyo. Stat. Ann. § 15-1-402 with the requirement that these matters be addressed in a public hearing pursuant to Wyo. Stat. Ann. § 15-1-405. The public interest concerns were restated in the owners' petition for annexation. Section 407 waives compliance with a hearing under § 405 and parts of § 402, leaving the question whether the legislature intended that the Town Council address these § 402 concerns not specified before issuing an ordinance annexing property pursuant to § 407. Providing a hearing to address the concerns enumerated in § 402 protects landowners who may object to annexation. In contrast, owners requesting annexation under § 407 do not object and, accordingly, § 407's procedures have been deliberately abbreviated. It is, therefore, entirely consistent with the purpose of § 407 that it not require further

consideration of public interest concerns. That is not to say, however, that residents like Kroenleins may not seek review of the annexation proceeding on the statutory grounds that the annexation decision is arbitrary, capricious, or unreasonable. Generally, in an annexation proceeding the courts are not concerned with the wisdom or expediency of altering the boundaries of a city or town by annexation. We presume that the action taken by the governing body is reasonable, and the burden is on the resident property owner attacking the ordinance to show that such action was unreasonable. *Henderson v. City of Laramie,* 457 P.2d 498, 501 (Wyo.1969). Kroenleins make no such showing.

[¶ 19] We find that the legislature deliberately stayed silent regarding addressing public interest concerns in a § 407 proceeding in order to provide the governing body with the discretion to consider these matters, but without an obligation to do so. In answer to similar arguments, we have said the well-settled rule is that "a court of equity will not interfere at the suit of a taxpayer to restrain the officers of a municipal corporation in the exercise of their discretionary power with regard to the control or disposition of the property of the municipality, in the absence of illegality, fraud, or clear abuse of their authority." *Quackenbush v. City of Cheyenne,* 52 Wyo. 146, 156-57, 70 P.2d 577, 579 (Wyo.1937) (quoting *Seafeldt v. Astoria,* 141 Or. 418, 16 P.2d 943 (1932); *Haesloop v. City Council of Charleston,* 123 S.C. 272, 115 S.E. 596 (1923); 44 C.J. 1411). Presumably, the legislature justified allowing a governing body this discretion by the political risk that awaited an elected body that failed to properly consider and serve the public interest. That being so, the judicial review role is limited to determining whether, in exercising discretion, the governing body has acted capriciously or arbitrarily, the landowner's right in his property is being unwarrantedly invaded, or that the governing body abused its discretion. Wyo. Stat. Ann. § 15-1-409(b) (LexisNexis 2001). A review of whether the governing body had acted arbitrarily or capriciously would necessarily include reviewing whether the governing

body's action was illegal, fraudulent, or a clear abuse of authority. *Quackenbush*, 52 Wyo. at 156–57, 70 P.2d at 579.

[¶ 20]   Here, Kroenleins do not argue other reasons that the ordinance violated this standard.   Under § 407's abbreviated procedure, we have no record that would show otherwise, and we affirm the district court's order that the ordinance is valid.

*Statutory Restrictions upon License Holders*

▮   [¶ 21]   Kroenleins contend that a town attorney is prohibited from holding a liquor license by the language of Wyo. Stat. Ann. § 12–4–103(a)(ii) (LexisNexis 2001), which states:

> (a) A license or permit authorized by this title shall not be held by, issued or transferred to:
>
> \* \* \* \*
>
> (ii) Any person employed by the state or a city, town or county as a law enforcement officer or who holds office as a law enforcement officer through election[.]

Kroenleins contend that the term "law enforcement officer" intends to include a town attorney or any public official whose duties involve the enforcement of law.   In its entirety, § 12–4–103 restricts holding of liquor licenses under a lengthy list of circumstances obviously carefully considered by the legislature.   A town attorney is not specified although the legislature could obviously have done so.   Nevertheless, we will address Kroenleins' contention.

[¶ 22]   This is not the first time that we have been asked to define the term "law enforcement officer."   We have previously observed that the legislature had not given the phrase "law enforcement officers" a statutory definition.   *Hurst v. State*, 698 P.2d 1130, 1133 (Wyo.1985).   After determining that the plain meaning of "law enforcement officer" should be defined as a "peace officer," we found that phrase indicated a legislative intent to limit peace officers to those persons with the direct authority to make arrests or keep the peace.   *Hurst* decided

that parole officers were not vested with that kind of authority, and our review of the case law from other jurisdictions supported this decision.   *Id.* at 1134.

[¶ 23]   Our review of current statutes indicate that this definition remains applicable today.   A prosecuting attorney does not have the power to make arrests or keep the peace.   We also note that a statute governing retirement programs defines "law enforcement officer" as "any member who is a county sheriff, deputy county sheriff, municipal police officer, University of Wyoming campus police officer, jailer or dispatcher for law enforcement agencies."   Wyo. Stat. Ann. § 9–3–402(a)(xviii) (LexisNexis 2001).   The Controlled Substance Act defines "law enforcement officer" to mean "any sheriff, undersheriff or sheriff's deputy of any county of this state, any duly authorized municipal policeman of any city or town of this state, any member of the Wyoming highway patrol, or any special agent employed by the commissioner under this act."   Wyo. Stat. Ann. § 35–7–1002(a)(xxiv) (Michie 1997).[4]   Under these circumstances we find that our definition from *Hurst* remains applicable today, and we hold that a town attorney is not a law enforcement officer for purposes of § 12–4–103.

*Conflict of Interest*

[¶ 24]   In their complaint, Kroenleins alleged that Eddington "participated in the consideration of the annexation ordinance and attempted to influence the members of the Town Council," "acted for the Town Council in the review of the annexation petition," and in the "preparation and review of the annexation ordinance."   They further alleged that "throughout the consideration of the liquor license application ... Eddington remained present in his capacity as town attorney and advised the Town Council in that capacity."   On appeal, Kroenleins insist that town attorney Eddington's role in this matter violated Wyo. Stat. Ann. §§ 15–1–127, 15–1–128, 6–5–106, and 16–6–118.

4.   Amendments in 2001 added "any police officer of the University of Wyoming or any Wyoming community college who is a peace officer."

[¶ 25] In answer, the Town Council and Eddington in his official and individual capacity denied these allegations. In his deposition, Eddington stated that after full disclosure to the Town Council that he owned the property, he attended the three town council meetings discussing the annexation as town attorney and as an individual. Eddington read the annexation ordinances at the meetings, but could not remember if he had prepared the ordinance. He testified that he did not further participate in any manner. Kroenleins' record on appeal has provided the deposition of a town council member who testified that Eddington attended the meetings where the proposed ordinance was read and stated that because he was involved he would not comment because it would be a conflict of interest. The council member also testified that both the annexation petition and liquor license application would have been reviewed by town employees other than the town attorney, and specifically mentioned processing by building department employees and the city clerk. The town council member stated that after Eddington's disclosure, the mayor and council members discussed and agreed that the town council could seek legal representation by another attorney if necessary. The council member testified that Eddington refused to comment during consideration of the liquor license because of his conflict of interest, and that the council member did not believe that Eddington represented the town as town attorney in those matters in which he had a conflict of interest.

[¶ 26] The record indicates that in response to the district court's query why summary judgment should not be granted on all remaining issues, Kroenleins submitted a memorandum to the district court claiming that genuine issues of material fact existed as to whether Eddington violated statutes that they termed as laws on conflicts of interest. Kroenleins' memorandum conceded that it is unclear whether these statutes apply to a town attorney, apply to annexations or liquor licenses, or apply to Eddington's level of participation in this case. Kroenleins did not provide any statutory interpretation to the lower court or here on appeal but continue to baldly assert that Eddington's conduct violates Wyo. Stat. Ann. §§ 15–1–127, 15–1–128, and 6–5–106,[5] and these violations void the Town Council's actions in enacting the annexation ordinance and the issuance of the liquor license.

[¶ 27] Generally, these Wyoming statutes prohibit conflicts of interest by a public officer or employee on public works, contracts, or office appointments. A public officer or employee violating these statutes is subject to removal from office and criminal prosecution. Further, a violation of Wyo. Stat. Ann. § 15–1–127(a) will cause the contract to be declared null and void. For conflict of interest issues other than those arising from public works or contract and governed by statute, public policy generally prohibits identified conflicts of interest on any matter that may undermine public confidence in the integrity of public officials. *Terry v. Bender*, 143 Cal.App.2d 198, 300 P.2d 119, 125 (1956). We have noted that the reason for the rule is:

> It is a well-established and salutary doctrine that he who is intrusted [sic] with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based upon principles of reason, of morality, and of public policy. It has its foundations in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails. The law will in no case permit persons who have undertaken a fiduciary character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others. The application of the rule may in some instances appear to bear hard upon individuals who have committed no moral wrong; but it is essential to the keeping of all parties filling a fiduciary character to their duty, to preserve the rule in its integ-

---

**5.** Kroenleins' brief does not address all statutes they had listed in their complaint.

rity, and to apply it to every case which justly falls within its principle.

*Board of Comm'rs of Natrona County v. Casper Nat'l Bank,* 56 Wyo. 132, 149–50, 105 P.2d 578, 584 (Wyo.1940) (emphasis omitted).

[¶ 28] We have had few occasions to address conflict issues, and our rulings are limited to finding a conflict of interest exists when a public official acts on a public contract to which he or she is a party or has a financial interest, or where the public office held is incompatible with privately held employment because as the public official, he is acting as both employer and employee. *Coyne v. State ex rel. Thomas,* 595 P.2d 970, 972–73 (Wyo.1979); *see also Casper National Bank, supra; Haskins v. State ex rel. Harrington,* 516 P.2d 1171 (Wyo.1973). In an interpretation of earlier conflict of interest statutes, we recognized that the legislature intended to identify conflicts of interests and provide the procedures and remedies that should be followed by public officials:

If a matter in which one of the defendants has a conflicting interest comes before the board of trustees, that defendant must: (1) disclose the interest; (2) absent himself during consideration and vote on the matter; (3) not attempt to influence the parties to the matter with reference thereto; and (4) take no part in the future execution of the matter. If he fails to do so, the action taken on the matter shall be null and void, and the defendant shall be subject to criminal prosecution for which the penalty is a fine of $100.00 to $5,000.00. The legislature has recognized the existence of conflicts of interest and has directed the procedure and remedies applicable thereto. Accordingly, we cannot sustain the trial court in applying the remedy of quo warranto in this case on the basis of conflict of interest.

*Coyne,* 595 P.2d at 973. We have recognized, however, that the legislature did not intend that a person be disqualified from holding an office or position because it conflicts with other interests of that person. *Id.* As set out below, our examination of current statutes indicated that where applicable to a town attorney, no evidence shows that Eddington violated any prohibition. We then follow that discussion with an analysis of whether Eddington violated any remaining public policies not addressed by statutes. Again, we conclude that he did not.

[¶ 29] Section 6–5–106 makes it a misdemeanor for a public servant to request or receive any pecuniary benefit, other than lawful compensation, on any contract, or for the letting of any contract, or making any appointment where the government employing or subject to the discretion or decisions of the public servant is concerned. Wyo. Stat. Ann. § 6–5–106(a), (c) (LexisNexis 2001). No offense is committed if the public servant "discloses the nature and extent of his pecuniary interest to all parties concerned therewith and does not participate during the considerations and vote thereon and does not attempt to influence any of the parties and does not act for the governing body with respect to the contracts or appointments." Wyo. Stat. Ann. § 6–5–106(b) (LexisNexis 2001). Kroenleins provide no argument that Eddington's actions constitute a pecuniary benefit on a contract or an appointment, nor do they argue that a violation of this statute would provide a basis for voiding the Town Council's vote. We will not further consider this issue.

[¶ 30] Wyo. Stat. Ann. § 15–1–128 (LexisNexis 2001) provides:

(a) No officer or employee of any city or town shall:

(i) Solicit or receive any pay, commission, money or thing of value, or derive any benefit, profit or advantage, directly or indirectly, from or by reason of any improvement, alteration or repair required by authority of the city or town, or any contract to which it is a party, except his lawful compensation as an officer or employee and except as otherwise provided in W.S. 15–1–127(b) and (c);

(ii) Solicit, accept or receive, directly or indirectly, from any public service corporation, or the owner of any public utility or franchise of the city, any pass, frank, free ticket, free service or any other favor upon terms more favorable than those granted the public generally,

except that councilmen who are regularly employed by any public service corporation or owner of a public utility or franchise may receive free service or favor as is given to all other similar employees.

(b) Any officer or employee who violates this section shall be subject to removal from his position or other disciplinary action after hearing.

Section 15–1–128 specifically prohibits a public officer or employee from any direct or indirect benefit by public works or contract, and a violation will result in removal or other disciplinary action. Kroenleins did not provide the district court with argument or authority that this statutory language is intended to apply to any subject matter beyond public contracts or public works such as an annexation petition or application for liquor license, nor do they provide argument or authority to us, and we are unable to further consider the issue.

[57 31] Section 15–1–127 prohibits conflicts of interest, and generally courts will find that violations of those kinds of statutes may void a governing body's legislative actions. *See Terry,* 300 P.2d at 125. Wyo. Stat. Ann. § 15–1–127 (LexisNexis 2001) (emphasis added) states:

**Prohibitions; interest in contracts; exception; extra pay; compensation to nonofficers; exception.**

(a) No qualified **member** of the governing body of any city or town or **any member of that qualified member's immediate family** may receive any monetary or other economic benefit from any contract to which the city or town or anyone for its benefit is a party. The obligation on the part of the city or town is void in any contract in which a monetary or other economic benefit will be received by a qualified member of the governing body or his family who does not comply with subsection (b) of this section. Any money paid on the contract may be recovered by the city or town from any persons by an action brought in the name of the city or town.

(b) Subsection (a) of this section does not apply to any qualified member of a governing body or any member of that qualified member's immediate family who may receive any monetary or other economic benefit from any contract made by the governing body if the qualified member complies with the following:

(i) The qualified member:

(A) Shall not participate in the consideration or discussion relating to the contract;

(B) Shall not attempt to influence the other members of the governing body in any way relating to the contract;

(C) Shall reveal the nature and extent of any monetary or other economic benefit he or any member of his immediate family may receive to the other members of the governing body prior to consideration of the contract;

(D) Shall not vote on the matter of granting the contract;

(E) Shall absent himself during the consideration, discussion and vote on the contract; and

(F) Shall not act, directly or indirectly, for the governing body in inspection, operation, administration or securing performance under the contract in which he or any member of his immediate family may receive any monetary or other economic benefit.

(c) The governing body, by ordinance, shall prescribe requirements governing conflicts of interest by **any employee** and any member of his immediate family and procedures by which any employee and any member of his immediate family may be exempt from those requirements.

(d) **No qualified member of the governing body, officer or employee** may receive any pay or perquisites from the city other than his salary for any work coming within the scope of his duties as provided by ordinance and the law. The governing body shall not pay or appropriate any money or other valuable thing to any person not a qualified member of the governing body, officer or employee for the performance of any act, service or duty which is within the proper scope of the duties of any qualified member of the gov-

erning body, officer or employee of the city or town, unless specially appropriated and ordered by a vote of three-fourths (¾) of all members elected to the governing body. Arguably subsections (c) and (d) would apply to a town attorney. The record on appeal does not provide the ordinances required in subsection (c). A party contending that a government action is void under this statute has the burden of proof to show the precise violation, and here, Kroenleins have failed to show any violation of subsection (c) that warrants our decision to void the annexation ordinance or issuance of the liquor license. Under subsection (d), Kroenleins provide no argument or authority that Eddington's receipt of a liquor license is included in the term "pay or perquisites other than his salary." Even assuming that it is included in the term, no argument or authority is provided showing that the liquor license was an "appropriation" that did not receive a proper vote. Under these circumstances, a review of the plain language of these statutes indicates that Eddington's petition for annexation or application of a liquor license is not a conflict of interest that requires voiding the Town Council's actions.

[¶ 32] Having concluded that Kroenleins have failed to show that Eddington's actions violated any statutes, we consider whether Eddington violated public policy prohibitions against conflicts of interest. We must first identify a conflict of interest, and plainly, Eddington was a public employee or officer who appeared before his employers seeking public action on his private financial interest at stake in obtaining annexation and a liquor license, which by law, only the Town Council could approve. As town attorney, Eddington's role required advising the Town Council on just these sorts of issues. Therefore, the conflict of interest would arise if he attempted to advise the Town Council on any matter for which he had a direct financial interest. Having identified a conflict of interest, we must decide if Eddington properly protected the Town Council. The evidence here indicates that Eddington fully disclosed his conflict of interest to the Town Council and did not attempt to advise them about his own petition. The remaining question, therefore, is whether Eddington, having a

conflict of interest, acted improperly by his presence at those Town Council meetings where any action was taken concerning his petitions.

[¶ 33] Generally, participation on matters where a conflict of interest exists is improper. *Coyne,* 595 P.2d at 973; *see also Hamilton v. Town of Los Gatos,* 213 Cal.App.3d 1050, 261 Cal.Rptr. 888, 892–93 (1989). However, mere presence is usually not considered improper participation, although a public official banned from voting may act improperly by remaining during private discussions by other voting members. *Id.* at 893. Eddington is not a voting official, and we do not see that by remaining during those times when the Town Council called for public comment, Eddington's presence was improper. We will not determine that, simply because of his association with the Town Council, Eddington acted improperly.

[¶ 34] The district court properly determined that the annexation ordinance and issuance of a liquor license were not void as a matter of law. We affirm.